**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

THOMAS C. DITTRICH,

      Petitioner,                   CASE NO. 07-CV-13024
                                    HONORABLE ARTHUR J. TARNOW
v.-                              UNITED STATES DISTRICT JUDGE

JEFFREY WOODS,

      Respondent,

## AMENDED OPINION AND ORDER CONDITIONALLY GRANTING THE PETITION FOR WRIT OF HABEAS CORPUS

Thomas C. Dittrich, ("Petitioner"), presently confined at the Hiawatha Correctional Facility in Kincheloe, Michigan, filed a petition for writ of habeas corpus through counsel Mark J. Kriger pursuant to 28 U.S.C. § 2254, in which he challenges his conviction for six counts of third-degree criminal sexual conduct, M.C.L.A. 750.520d(1)(a); and one count of fourth-degree criminal sexual conduct, M.C.L.A. 750.520e(1)(a).  Because Petitioner's counsel was ineffective for not objecting to prejudicial evidence of unrelated violence against others, the petition for writ of habeas corpus is conditionally granted.

## I.  Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court. Petitioner's counsel has provided a detailed statement of facts in his petition for writ of habeas corpus.  Respondent has not disputed these facts in his answer.  The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002).  Because the facts do

1

not need to be repeated in their entirety, the Court will recite verbatim the relevant facts

regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming

his conviction, which are presumed correct on habeas review. *See Monroe v. Smith,*

197 F. Supp. 2d 753, 758 (E.D. Mich. 2001):

> Defendant's convictions arose from a three-month sexual relationship with his daughter's thirteen-year-old classmate. In 2002, defendant lived with his wife and two teenaged daughters in a large home in Davisburg. The complainant, as well as other friends of the Dittrich children, often spent weekend nights in the family's home. The complainant also spent several weekday nights with the family. While staying at defendant's home, the complainant would sleep on a couch in the room adjacent to the master bedroom, rather than upstairs with defendant's daughters. Several witnesses testified that defendant and the complainant were frequently left alone together in the house. The family owned several horses. The complainant and defendant would frequently stay home while the others went riding.

> The complainant alleged that the various instances of sexual assault occurred at night while she slept alone on the couch or while everyone was riding. During October and November of 2002, defendant frequently engaged in sexual acts with the complainant, including digital penetration and oral sex. The complainant alleged that she performed oral sex upon defendant and the two had intercourse for the first time over Thanksgiving weekend. The complainant testified that, in December, she and defendant once engaged in sexual acts at her home while her mother was gone. The complainant testified that she and defendant had intercourse six or seven times, and that she performed oral sex on defendant several times.

> The complainant testified that she was in love with defendant, and believed that he was in love with her. She testified that defendant promised to divorce his wife, marry her, sell his business, and move with her to Florida. She also testified that defendant bought her expensive presents, gave her money, and promised to buy her family a new home and cars. Defendant also gave the complainant sexually explicit materials. The complainant was also able to describe a bump on defendant's penis that was consistent with his wife's testimony.

> According to the testimony of defendant's wife, daughter, and another frequent house guest, defendant's conduct with the complainant was immediately suspicious. In October of 2002, defendant's wife phoned him and asked him to assist with a horse that had broken loose. Defendant took more than an hour to make the ten-minute drive to his wife's location and

2

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

brought the complainant, who had left the Dittrich house earlier, with him. On another occasion, defendant would not allow his daughter to accompany him when he drove the complainant home and went to pick up a pizza. He was gone for three hours. Defendant and the complainant were also observed drinking alcohol together, looking at pornography on a computer, and drawing pornographic pictures. Both defendant's wife and daughter testified that they once saw defendant and the complainant "spooning" on the couch and were unable to separate the two.
************************************************************************************

Dr. Sabbath testified that she performed a pelvic examination on the complainant on December 27, 2002. Dr. Sabbath concluded that the complainant's "hymen was not intact," or was ruptured. She testified that the rupture could have been caused by intercourse or by the insertion of a tampon or other object into the vagina. Dr. Sabbath also indicated that penetration by one finger could not rupture a hymen, but that the insertion of multiple fingers could potentially cause a rupture.

*People v. Dittrich,* No. 255536, * 1-2, 5 (Mich.Ct.App. November 3, 2005)(footnotes omitted).

Following his conviction, petitioner's appellate counsel filed a motion to remand the case to the trial court for an evidentiary hearing on petitioner's ineffective assistance of trial counsel claim. The Michigan Court of Appeals denied the motion, because petitioner had failed to persuade that court of the necessity of a remand at that time. *People v. Dittrich,* No. 255536 (Mich.Ct.App. March 15, 2005).

Petitioner's conviction was affirmed on appeal. *People v. Dittrich,* No. 255536 (Mich.Ct.App. November 3, 2005); *lv. den.* 474 Mich. 1128, 712 N.W.2d 477 (2006).

Petitioner subsequently sought a writ of habeas corpus on the following grounds:

I. The failure to defense counsel to object to "other act evidence" that Petitioner beat his wife and children denied Petitioner his Sixth Amendment right to effective assistance of counsel.

II. Petitioner was denied his Sixth Amendment right to confront the witnesses against him where the trial court refused to allow defendant to cross examine the complainant regarding past sexual conduct in order to

3

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

show that her hymen may have been ruptured by someone other than Petitioner.

On January 13, 2009, this Court granted petitioner an evidentiary hearing on his ineffective assistance of counsel claim. The Court also ordered oral argument on petitioner's Confrontation Clause claim. *Dittrich v. Woods*, 2009 WL 94536 (E.D. Mich. January 13, 2009).

The evidentiary hearing was conducted on petitioner's claim on March 11, 2009. The sole witness at the hearing was petitioner's trial counsel. Counsel testified that there was testimony at trial that petitioner beat his wife and daughters. He acknowledged that this testimony was irrelevant to whether or not petitioner sexually assaulted the victim in this case. Counsel admitted that he did not object to the testimony concerning petitioner's physical assaults upon his wife and daughters. (E.H. Tr., pp. 4-5). He candidly acknowledged that there was no reason for his failure to object to this prejudicial testimony:

"Q. [By Mr. Krieger]: Is there a reason you didn't object to this testimony?

A. [Counsel]: No, there's not. I'm very embarrassed to say that I should have objected to that testimony. It clearly was inadmissible evidence but I did not object and I can't offer you any good reason why I didn't. I should have." (*Id.* At p. 5).

He admitted that he had previously told petitioner's current counsel that he did not object to the evidence of petitioner's prior assaults, because he was unaware that this was 404(b) evidence. (*Id.* at p. 6). He also denied the prosecution's assertion that it had been part of the defense strategy to elicit evidence of these prior physical assaults. (*Id.* at pp. 6-7). Counsel acknowledged cross-examining Lorraine and E. Dittrich about

4

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

prior acts of aggression by Lorraine Dittrich towards petitioner, but he did so only to try and neutralize the damaging evidence that had been brought out by the prosecutor about petitioner. (*Id.* at pp. 7-10).   However, he indicated that he did not mention any domestic violence in his opening and closing arguments. (*Id.* at p. 9).  When asked why he did not mention the domestic violence, he replied: "Because I in no way, shape, or form wanted to accentuate that." (*Id.*).

Counsel also conceded that there was evidence of animosity of petitioner's ex-wife and daughters separate and apart from the physical abuse that was admitted at trial. (*Id.* at pp. 9-12).  He acknowledged that the prosecutor never even challenged the idea that petitioner's estranged wife and daughters were biased against petitioner. (*Id.* at p. 12).  He admitted that he would have gained no "additional mileage" out of evidence of domestic violence in terms of attacking the credibility of the witnesses. (*Id.*). Counsel testified that to the best of his recollection, the prosecutor's office never filed a 404(b) notice in this case.  He reiterated that he didn't object to the evidence of domestic abuse, because he did not see this as 404(b) evidence.:

> "A. [Counsel]: Again, looking back on it, Mr. Kriger, I certainly should have objected. I just didn't. And I can't offer you a good reason why I didn't. I just simply missed it, period."
> (*Id.*).

He testified that he cross-examined petitioner's wife and daughter about them being the aggressor in some of these incidents, but admitted that his efforts to paint them as the aggressor were not very successful.(*Id.* at pp. 12-13):

> "Q. Would it be a fair statement that you dug yourself in even a deeper hole for Mr. Dittrich?

5

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

A. Things got worse for Mr. Dittrich, yes, absolutely, that's a fair
statement." (*Id.* at p. 13).

He testified that the victim was the only eyewitness to the sexual assault. (*Id.* at
p. 13-14).  Although petitioner's wife testified that petitioner admitted the sexual assaults
to her, counsel acknowledged that petitioner's wife never mentioned this alleged
confession when interviewed by the police and by someone from the Family
Independent Agency. (*Id.* at p. 13-14).

On cross-examination, he reiterated that he never intended to bring out evidence
of petitioner's domestic violence against his wife and daughters. (*Id.* at pp. 24-25).
Counsel indicated that he may have failed to object to some of this testimony
concerning petitioner's domestic violence, because he was busy talking to petitioner
when some of this evidence was being introduced. (*Id.* at pp. 25-27).  He again
indicated that he did not have a good reason for failing to object to the evidence of
petitioner's domestic violence against his wife and daughters. (*Id.* at p. 26).  Counsel
also testified that he and petitioner never discussed bringing out evidence that petitioner
had assaulted his wife. (*Id.* at pp. 29-30).

On re-direct examination, he stressed how damaging the domestic violence
evidence was against petitioner:

"Q.: Do you think that it's unfair for me to say that this evidence of him
smashing his wife's head against a wall, beating his children -- I mean,
they really painted him to be kind of a monster.
A.: Oh, it's horrific evidence for him absolutely."
(*Id.* At p. 36).

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

Counsel noted that even if this evidence were somehow relevant, an objection should have been made under M.R.E. 403 to it being more prejudicial than probative.(*Id.* at pp. 36-37).

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

 A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

7

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

### III.  Discussion

**A.    The failure to defense counsel to object to "other act evidence" that Petitioner beat his wife and children denied Petitioner his Sixth Amendment right to effective assistance of counsel.**

Petitioner first claims that his defense counsel was ineffective for failing to object to, as well as for eliciting, highly prejudicial, irrelevant, and inadmissible "other acts" evidence involving petitioner's alleged physical and verbal abuse of his wife and daughters.

During petitioner's trial, the prosecutor and defense counsel both elicited testimony regarding what the Michigan Court of Appeals described as "the Dittrich family's tumultuous home life, including specific acts of violence." *Dittrich,* No. 255536, Slip. Op. at * 3.

The Michigan Court of Appeals rejected petitioner's claim, asserting that "this was not a close case and, therefore, any error in admitting this evidence was harmless." *Dittrich,* Slip. Op. at * 4.  However, the Michigan Court of Appeals indicated:

> "We would be remiss, however, if we did not express our concern over the use of this character evidence.  In most instances, the evidence of domestic violence was far more prejudicial than probative.  Defendant never sexually abused his own children or any other minor house guest.  **The only purpose this evidence served was to portray defendant as a man of bad character predisposed to do bad deeds.**  Despite the highly prejudicial nature of this evidence, defense counsel repeatedly failed to object to its admission, and actually used the evidence himself in an attempt to establish that defendant's family was biased against him. Given the tendency of the jury to give excessive weight to such improper character evidence, we cannot presume that this was sound trial strategy."
> *Id.*  (Emphasis added).

8

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.   To prevail on his ineffective assistance of counsel claims, a habeas petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland. See e.g. English v. Romanowski,* 589 F. Supp.2d 893, 903 (E.D. Mich. 2008).

Petitioner's ineffective assistance of counsel claim entitles him to relief.  As the Michigan Court of Appeals noted in their opinion, most of the domestic violence evidence "was far more prejudicial than probative" and "[T]he only purpose this evidence served was to portray defendant as a man of bad character predisposed to do bad deeds."  The Michigan Court of Appeals further concluded that they could not

9

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

presume that it was sound trial strategy for counsel to fail to object to, or seek the admission of, such "improper character evidence." *Dittrich,* Slip. Op. At * 4.

Trial counsel candidly and honestly acknowledged at the evidentiary hearing that there was no reason why he failed to object to this damaging character evidence. He denied that it was part of his trial strategy to elicit evidence concerning petitioner's domestic violence against his wife and daughters, particularly where it was undisputed that petitioner's wife and daughters had animosity towards petitioner.  Counsel acknowledged that the evidence of petitioner's physical abuse against his wife and daughters was irrelevant, prejudicial, and in his own words, "horrific."

In the present case, counsel's failure to object to the domestic violence evidence was clearly ineffective, because this evidence was irrelevant, highly prejudicial, and portrayed petitioner as a bad person. *See e.g. Washington v. Hofbauer,* 228 F. 3d 689, 704 (6th Cir. 2000(counsel for defendant charged with acts of criminal sexual conduct against minor daughter of defendant's live-in girlfriend was ineffective in failing to object to acts of misconduct by prosecutor in improperly emphasizing evidence of defendant's "bad character" during closing argument).  Trial counsel readily conceded that he did not have a valid reason for failing to object to the admission of this highly prejudicial evidence.  The Michigan Court of Appeals, in fact, acknowledged that they could not presume that there was any valid trial strategy counsel to fail to object to, or seek the admission of, such "improper character evidence." *Dittrich,* Slip. Op. at * 4.

More importantly, contrary to the Michigan Court of Appeals' finding, the evidence in this case was not so compelling for this Court to conclude that counsel's

10

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

ineffectiveness did not prejudice petitioner.  There were no eyewitnesses to the alleged

sexual assaults.  Other than the complainant's testimony, the only additional damaging

evidence was petitioner's wife testimony that petitioner admitted having a sexual

relationship with the complainant.  However, petitioner's wife's testimony must be

regarded with great skepticism, in light of her contentous relationship with petitioner.

        In evaluating a claim of ineffective assistance of counsel, where there is

relatively little evidence to support the guilty verdict to begin with, the magnitude of

errors necessary for a finding of prejudice will be less than where there is greater

evidence of guilt. *See Brown v. Smith,* 551 F.3d 424, 434-35 (6th Cir. 2008); *See also*

*Hodge v. Hurley,* 426 F.3d 368, 376 (6th Cir. 2005)(finding prejudice in sexual abuse

case where there was no physical evidence, and case turned entirely on credibility of

dueling witnesses); *Washington,* 228 F. 3d at 707-08(counsel's deficient performance

in failing to object in prosecution for criminal sexual conduct to prosecutor's improper

emphasis on evidence of defendant's bad character was prejudicial, where trial was a

credibility contest).  Because this case essentially boiled down to a credibility contest

between the complainant and petitioner, counsel's failure to object to the domestic

violence evidence prejudiced petitioner.

        The Court concludes that trial counsel was ineffective under *Strickland* and that

the Michigan Court of Appeals' decision to the contrary is unreasonable.  The Michigan

Court of Appeals may have come to a different conclusion if they had granted

Petitioner's motion for an evidentiary hearing as requested.  *See Brown v Smith, supra.*

Habeas relief is warranted on this claim. *See English,* 589 F. Supp. 2d at 903.

11

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

In granting relief on this claim, this Court expresses great appreciation to trial counsel for his candor and honesty at the evidentiary hearing concerning his failure to object to this evidence.  It was courageous for him to admit his error before this Court. This Court stresses that human error does not equate with an ethical violation.

Because the Court is granting petitioner a writ of habeas corpus on his first claim, the Court will only briefly address petitioner's remaining claim.

**B.      Petitioner was denied his Sixth Amendment right to confront the witnesses against him where the trial court refused to allow defendant to cross examine the complainant regarding past sexual conduct in order to show that her hymen may have been ruptured by someone other than Petitioner.**

Petitioner next contends that the trial court violated his Sixth Amendment right to confrontation by denying his motions to introduce evidence of the complainant's sexual history to establish an alternate source of her ruptured hymen.  The trial court denied petitioner's initial pre-trial motion, but did allow petitioner's counsel to elicit testimony regarding the complainant's preexisting knowledge of sexual terminology.  Petitioner unsuccessfully renewed his motion at trial based on the testimony of a prosecution witness, Dr. Rita Sabbath, and the complainant's alleged indication that she had prior sexual contact with a young man named "Mitchell."  Respondent urges this Court to reject petitioner's claim, in part because the exclusion of this evidence was harmless error at worst.

Unless its jurisdiction is at stake, a federal district court on federal habeas review "may take up issues in whatever sequence seems best, given the nature of the parties' arguments and the interest in avoiding unnecessary constitutional decisions."

12

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

*Aleman v. Sternes* 320 F. 3d 687, 691 (7th Cir. 2003). When confronted with several possible grounds for deciding a case, any of which would lead to same result, a federal court should choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues. *U.S. v. Allen* 406 F. 3d 940, 946 (8th Cir. 2005). A federal district court on habeas review of a state court conviction can directly perform a harmless error analysis of a habeas petitioner's claims without first reviewing the merits of the claims, when it is in the interest of judicial economy and brevity to do so. *See Porter v. Horn,* 276 F. Supp. 2d 278, 344 (E.D. Pa. 2003).

For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

Assuming that the trial court erred in excluding the evidence of the complainant's sexual history, any such error was harmless, in light of the fact that such evidence would had only limited exculpatory value. *See U.S. v. Yazzie,* 59 F.3d 807, 814-15 (9th Cir. 1995). First, Dr. Sabbath acknowledged that the victim's hymen could have been ruptured by the insertion of a tampon, fingers, or other objects into the victim's vagina. The jury, therefore, had evidence before it that could have negated petitioner as the source of the victim's injury. Secondly, any evidence that another person may have vaginally penetrated the victim would not have exculpated petitioner

13

*Dittrich v. Woods,* U.S.D.C. No. 07-CV-13024

of the several counts which involved oral sex.  Accordingly, petitioner is not entitled to

habeas relief on his second claim.

## IV.  <u>ORDER</u>

   **IT IS HEREBY ORDERED THAT PETITIONER'S APPLICATION FOR WRIT OF HABEAS CORPUS IS CONDITIONALLY GRANTED.  UNLESS THE STATE TAKES ACTION TO AFFORD PETITIONER A NEW TRIAL WITHIN NINETY DAYS OF THE DATE OF THIS OPINION, HE MAY APPLY FOR A WRIT ORDERING RESPONDENT TO RELEASE HIM FROM CUSTODY FORTHWITH.**


<u>S/Arthur J. Tarnow</u>
Arthur J. Tarnow
United States District Judge

Dated:  April 29, 2009


I hereby certify that a copy of the foregoing document was served upon counsel of record on April 29, 2009, by electronic and/or ordinary mail.

<u>S/Catherine A. Pickles</u>
Judicial Secretary

14